OPINION
Defendant-appellant, James C. Robinson, appeals a Madison County Court of Common Pleas divorce decree. The decision of the trial court is affirmed as modified.
James and plaintiff-appellee, Tonya R. Robinson, were married on March 28, 1995. The parties began divorce proceedings in May 1998. Prior to trial, the parties reached a settlement agreement ("first settlement agreement"), resolving all of the issues. However, the first settlement agreement was not filed with the trial court. The first settlement agreement stated that James would quitclaim the marital home to Tonya but would have exclusive possession of the marital home until November 30, 1998. Pursuant to the first settlement agreement, Tonya would refinance the home and pay James $9,000 for his equity in the home. The first settlement agreement also stated that Tonya "shall inspect marital residence before noon on 10/29/98" and "shall remove all personal property from house on 10/29/98."
James did not make arrangements for Tonya to pick up her personal belongings right away. When Tonya finally met James on November 5, 1998 to pick up her belongings, Tonya was irate. Tonya said that James lived with his family about one mile away from the marital home, and that she was scared to live near him. Tonya decided that she did not want to finance and occupy the marital home, and her attorney wrote a letter to James indicating that Tonya was "exercising her right to rescind the settlement based on the condition of the property."
After Tonya repudiated the first settlement agreement, the case was set for trial. Prior to trial, the parties entered into an "agreed judgment entry" which ordered the sale of the marital home and a jeep. The combined proceeds from these sales amounted to $16,718.24.
At trial, there was testimony that during the marriage, James' parents had provided $9,863 for use as a down payment on the marital home. James testified that the $9,863 was a loan. Tonya testified that this money was a gift to both of them. James' mother, Nancy Robinson, testified that the $9,863 was an interest-free loan that had not been repaid. On the record, the trial court judge stated:
 It looks to me like the parties contemplated that $9000 down payment was to come out of the sale of the house for payback to his mother * * *[.] That looks like that was clearly in the contemplation at the start. I don't have any problem that the $9000, or thereabouts, being held by Mr. Kemp [James' attorney] is awarded * * * to Mr. Robinson to be repaid to his mother or make whatever arrangements they have and/or see fit.
Despite the trial court's finding that the $9,863 should be paid to James' parents, in the divorce decree the trial court awarded each party one-half of the proceeds of the sale of marital assets, granting each party $8,359.22. The $9,863 figure was not mentioned in the divorce decree. The divorce decree stated that "[e]ach party shall pay and hold the other harmless as to all debts in their own individual names."
James appeals from the divorce decree, raising three assignments of error for our review.
In his first and second assignments of error, James argues that the trial court abused its discretion by awarding James' separate property to Tonya without making written findings of fact in support of this award.
A trial court is vested with broad discretion in equitably dividing marital property. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217,218. Absent an abuse of discretion, the trial court's division of marital property will be upheld. Cherry v. Cherry
(1981), 66 Ohio St.2d 348, 355. An abuse of discretion implies that the trial court's decision was unreasonable, arbitrary, or unconscionable. Blakemore at 219. The classification of property as marital or separate is reviewed by this court under a manifest weight standard of review. Johnson v. Johnson (Sept. 27, 1999), Warren App. No. CA99-01-001, unreported. The factual findings accompanying the trial court's classification of property as marital or separate "are reviewed to determine whether they are supported by competent, credible evidence." Id. at 7.
 James insists that the $9,863 was either a gift to James or a marital debt. If this sum of money was a gift, James argues, the $9,863 would be considered separate property, and under R.C. 3105.171(D) it could not be distributed to Tonya unless the trial court made written findings of fact to support the distribution. If the $9,863 was a marital debt, then it should have been paid to James' parents out of the proceeds from the sale of the parties' marital assets, and then the remainder should have been equally divided between James and Tonya.
Tonya argues that the $9,863 was a marital debt and that the first settlement agreement controls the issue of how it is to be repaid. In the first settlement agreement, the parties agreed that there were no joint debts, except for the home mortgage and a lease on a Grand Am automobile. In her brief, Tonya contends that the trial court "allocated the debt by accepting the parties' stipulation that as of October 29, 1998, there were no joint debts." Tonya reasons that the trial court properly found that the $9,863 should not be repaid out of the proceeds from the sale of the marital assets.
We do not agree with James' argument that the trial court found that the $9,863 was separate property. The trial court determined that the $9,863 was a marital debt that should be paid to James' parents. The testimony from James and his mother at trial indicates that this sum is a loan that has not been repaid. Reviewing the trial court's comments on the record, it is clear that the trial court intended that James' parents be reimbursed for the $9,863 they provided so that James and Tonya could make a down payment on their home. The trial court abused its discretion by making the explicit finding that the $9,863 should be paid to James' parents and then failing to include such payment in the divorce decree's allocation of marital debt. Accordingly, we find that the $9,863 should be paid from the proceeds from the sale of the marital assets, and that the remainder should be divided equally between James and Tonya. The first and second assignments of error are well-taken because the $9,863 was a marital debt.
In his third assignment of error, James contends that the trial court abused its discretion by failing to reimburse James for money he spent to maintain the marital residence after Tonya repudiated the first settlement agreement.
James asserts that because Tonya failed to take over the financing on the marital home as she agreed to do in the first settlement agreement, Tonya should pay for James' expenses in maintaining the home. Tonya, on the other hand, insists that the portions of the first settlement agreement concerning the marital home were null and void once she rescinded that agreement.
Reviewing the record, we find that the trial court equitably allocated the marital debt between the parties. The trial court judge found that both parties were responsible for the confrontation at the marital home on November 5, 1999 which led to the breakdown of the first settlement agreement. The trial court found that James had accumulated $4,600 in bills after the first settlement agreement was repudiated. Accordingly, the trial court determined that each party was responsible for one-half of the $4,600 in bills accumulated. Therefore, James was entitled to receive $2,300.
The trial court then noted that James had received the money from the parties' federal income tax return, which was roughly $1,000. James also spent about $300 for phone, medical, and dental bills, for which the trial court found he was solely responsible. Finally, the trial court awarded James the tax and interest deductions on the house that they sold, which was about $900. The total sum of these figures is $2,200, which is substantially the amount that James was entitled to receive.
Therefore, we find that the trial court did not abuse its discretion in its division of the bills accumulated after the first settlement agreement was repudiated. The third assignment of error is overruled.
Based on the foregoing, the divorce decree is modified so that $9,863 of the proceeds from the sale of the marital assets is to be given to James' parents as repayment of the loan that they provided to the parties. This leaves $6,855.24 to be divided equally between the parties, so that James and Tonya will each receive $3,427.62 from the sale of the proceeds of the marital assets.
 _____________________ VALEN, J.
YOUNG, P.J., and WALSH, J., concur.